# United States District Court
# Middle District of Florida,
# Fort Myers Division.

Robert Brian Crim, an individual,  )
                                         )

      and  )
                                         )

All substitute teachers as a class, of  )
which Robert Brian Crim, an individual,  )
is a representative member,  )
                                         )

      Plaintiffs.  )
                                         )

v.  )

Board of Education of Collier County,  )
    Florida, a political subdivision  )
    of the State of Florida,  )
                                         )

Collier County Public Schools, a poli-  )
    tical subdivision of the State  )
    of Florida,  )
                                         )

Dennis Thompson, Superintendent of  )
    Schools, Collier County, Florida,  )
    an individual,  )
                                         )

Allun Hamblett, an individual employed  )
    by Collier County Public Schools,  )
                                         )

Deborah Terry, an individual employed  )
    by Collier County Public Schools,  )
                                         )

Terry Burdick, an individual employed  )
    by Collier County Public Schools,  )
                                         )

Gladys Rodriguez, an individual em-  )
    ployed by Collier County Pub-  )
    lic Schools,  )
                                         )

and  )

Civil No.

  2:10-cv-251-FtM-29DNF

**JOHN E. STEELE**
UNITED STATES DISTRICT JUDGE

**DOUGLAS N. FRAZIER**
**U.S. MAGISTRATE JUDGE**

25 April 2010.

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA
2010 APR 26  PM 3: 43
FILED

Frontline Placement Technologies, Inc., )
    a corporation doing business in  )
    Collier County, Florida,        )
                                )
    Defendants.                )
_____)

# Complaint Seeking Money Damages, Injunctive, Declaratory and Extraordinary Relief.

**N.B.:** The Court, itself, being in the best position to sculpt a comprehensive remedy through the judicious exercise of its legal and equitable powers, A JURY TRIAL IS NOT REQUESTED.

Plaintiff respectfully alleges:


CLASS ACTION.

1.     As hereafter more fully appears, this is an action to vindicate federal civil rights, as well as state rights of contract and to due process, which action affects Plaintiff directly and thereby affects as a class all other substitute teachers employed by Defendant Collier County Public Schools and the Board of Education of Collier County and situated similarly to Plaintiff.

2.    Plaintiff calls upon the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, to certify the instant action as a class action and afford appropriate relief to all members of the affected class. In support of said request, Plaintiff further alleges:

    a.     Collier County Public Schools is believed to employ actively somewhere between 300 and 700 substitute teachers, and the number of no-longer active substitute teachers potentially affected by the instant litigation is unknown; wherefore, the class of substitute teachers is so numerous that joinder of all of same is impracticable.

    b.     As hereafter more fully appears, there are significant issues of law and fact common to the plaintiff class.

    c.     As hereafter more fully appears, the claims or defenses of the parties directly affected are representative of the claims or defenses of those represented.

    d.     As hereafter more fully appears, the parties directly affected will fairly and adequately protect the interests of the class.

e.  As hereafter more fully appears, defendants named herein have acted or failed to act on grounds generally applicable to the plaintiff class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole.

JURISDICTION AND VENUE.

3.  This Court has jurisdiction —

a.  As hereafter more fully appears, the instant action seeks to vindicate civil and constitutional rights by invoking the Civil Rights Act of 1871 (Title 42, United States Code § 1983, 17 Stat. 13), as said statute applies to, and for the protection of, Plaintiff's rights declared by the First and Fourteenth amendments to the Constitution of the United States; a federal question is presented in which, pursuant to Title 42, United States Code §§ 1983, 1988 and Title 28, United States Code §§ 2201, 2202, extraordinary relief and a declaratory judgment are sought, in which the amount in controversy exceeds the jurisdictional bar, in which all conditions precedent have been satisfied, and in which administrative remedies have been exhausted. This Court has jurisdiction pursuant to Title 28, United States Code § 1331; in making this allegation, Plaintiff relies in part upon the opinion expressed by the Supreme Court of the United States in the matter of *Givhan v. Western Consolidated School District*, 439 U.S. 410 (1979).

b.  As hereafter more fully appears, the instant action seeks to vindicate civil and constitutional rights by invoking the Civil Rights of 1871 (Title 42, United States Code § 1983, 17 Stat. 13); the defendants are a local school board, local school district, and local governmental officials acting under color of state and state-sanctioned local law, local custom or custom or usage, all conditions precedent have been satisfied, administrative remedies are exhausted, and the requested relief is predicated upon Title 42, United States Code §§ 1983, 1988 and Title 28, United States Code §§ 2201, 2202. This Court has jurisdiction pursuant to Title 28, United States Code § 1343.

c.  As hereafter more fully appears, the instant action is one brought in response and opposition to defendants' violation of Plaintiff's rights to be free from deprivation of liberty or property without being afforded the due process of law guarantied by the Fourteenth Amendment to the Constitution of the United States. All conditions precedent are satisfied, administrative remedies are exhausted, and injunctive and declaratory relief is sought pursuant to Title 42, United States Code §§ 1983, 1988 and Title 28, United States Code §§ 2201, 2202. This Court has jurisdiction directly under the Fourteenth Amendment. In making this allegation, Plaintiff relies in part upon the opinion expressed by the

3

Supreme Court of the United States in the matter of *Mount Healthy City Board of Education v. Doyle, 429* U.S. 277 (1977), [see further *Bivens v. Six Unknown Named Agents, Federal Bureau of Narcotics*, 403 U.S. 388 (1971)].

d.     As hereafter more fully appears, the instant action is brought against acts, omissions, injuries and wrongs suffered by Plaintiff in derogation of his state, as well as federal, rights; said state violations are inextricably entwined with the federal violations and occurred upon a common set of facts. All conditions precedent are satisfied, administrative remedies are exhausted, and this Court has pendent jurisdiction pursuant to Title 28, United States Code § 1367.

4.     Venue for the instant action properly is located in this Court –

a.     As hereafter more fully appears, Plaintiff is a resident of Collier County, Florida, and a citizen of the United States and the State of Florida.

b.     As hereafter more fully appears, defendants either are residents of Collier County, Florida, or have their principal places of business or loci of employment in Collier County, Florida, or are local governmental entities extant in Collier County, Florida, or are officials of the said entities exercising state governmental authority in Collier County, Florida.

c.     As hereafter more fully appears, the acts, omissions, injuries, and wrongs Plaintiff alleges occurred in Collier County, Florida.

d.     Venue in this Court is granted by Title 28, United States Code § 1391.

PARTIES.

5.     Class Plaintiffs, all of whom are believed by Plaintiff Robert Brian Crim to be residents of Collier County, Florida, are employed as substitute teachers (also known as "guest" teachers) by Defendant Collier County Public Schools and the Collier County School Board; as such, pursuant to state law, specifically Fla.Stat. § 1012.01(2)(b), Plaintiff and the class which he represents are members of the school district's instructional staff and enjoy all the rights and privileges which, by law, a school district's instructional staff enjoy.

a.     Plaintiff is a naturally born person, resident and citizen of Florida and a citizen of the United States; his principal residence, as well as his principal place of business and employment, is located in Collier County, Florida.

b.     Plaintiff represents a significant portion of what Plaintiff believes to be from 300 to 700 active substitute teachers employed by the Collier County School District and Collier County School Board.

4

6.    Defendants, all of whom reside, exist, or appear to do business within Collier County, Florida, either are a political subdivision of the State of Florida located in Collier County, Florida, or are employees or officials of said subdivision, or are contracted agents of said subdivision:

a.    The Board of Education of Collier County, Florida [hereafter "Board"], is a governmental subdivision of the State of Florida and a "person" for purposes of Title 42, United States Code § 1983; it is responsible for providing, pursuant to the general statutes of the State of Florida and rules and standards established thereunder, constitutionally required primary and secondary education in Collier County, Florida. It is sued in its capacity as employer and governor of employment established for that purpose by state law and of its employees, and Defendant is not immune from suit; in making this allegation, Plaintiff relies in part upon the decision of the Supreme Court of the United States in the case of *Howlett v. Rose*, 496 U.S. 356 (1990).

b.    Collier County Public Schools [hereafter "School District"] is a public school system located in Collier County, Florida, with principal offices at 5775 Osceola Trail, Collier County, Florida, 34109; it is responsible for providing, pursuant to the general statutes of the State of Florida and rules and standards established thereunder, constitutionally required primary and secondary education in Collier County, Florida. It is sued in its capacity as employer and governor of employment established for that purpose by state law and of its employees, and Defendant is not immune from suit; in making this allegation, Plaintiff relies in part upon the decision of the Supreme Court of the United States in the case of *Howlett v. Rose*, 496 U.S. 356 (1990).

g.    Dr. Dennis Thompson is a natural person residing in Collier County, Florida, and is employed by Defendant Board as its superintendent of public schools; as superintendent, he is responsible for certain employment practices and obligations imposed upon school superintendents by the laws of the State of Florida, including obligations imposed upon him by Florida Statutes §§ 1012.31 and 1012.33. He is sued in his official and individual capacities.

h.    Allun Hamblet is a natural person residing in Collier County, Florida, and is employed by the Board and School District as director of human resources; as such, he is the immediate designee of Defendant Thompson in matters relating to personnel employed by the Board and is responsible for training Defendants Terry, Rodriguez, and Burdick; he is sued in his official and individual capacities.

i.    Deborah Terry is a natural person residing in Collier County, Florida, and is employed by the Board and School District as the person designated by Dr. Thompson, in the person of Defendant Hamblett, for administering em-

5

ployment of substitute teachers; as such, she is responsible for suspension or discharge of substitute teachers in Collier County's public schools, to the extent such is allowed by law; she is sued in her official and individual capacities.

i.     Gladys Rodriguez is a natural person residing in Collier County, Florida, and at material times herein was employed by the Board and the School District as a person designated by Dr. Thompson, in the person of Defendant Hamblett, for administering employment of substitute teachers; as such, she was responsible (subordinately to Deborah Terry) for discharge, suspension, or blocking from service of substitute teachers in Collier County's public schools, to the extent such is allowed by law, and for complying with the provisions of Fla.Stat. § 1012.31(2)(c). She is sued in her official and individual capacities.

j.     Terry Burdick is a natural person residing in Collier County and at material times herein was employed by the Board and the School District as a person designated by Dr. Thompson, in the person of Defendant Hamblett, for administering employment of substitute teachers; as such, she was responsible (subordinately to Deborah Terry) for blocking from service, suspension or discharge of substitute teachers in Collier County's public schools, to the extent such is allowed by law, and for complying with provisions of Fla.Stat. § 1012.31(2)(c). She is sued in her official and individual capacities.

k.     Frontline Placement Technologies, Inc., [hereafter "Frontline"] is a corporation with principal offices located at 5 Great Valley Pkwy., Suite 150, Malvern, Pennsylvania, 19355 and doing business under contract with and for Collier County Public Schools in Collier County, Florida. Specifically, on information and belief, Frontline Placement Technologies has made available to Collier County Public Schools substitute-placement software which is being used and abused by employees of Collier County Public Schools to deny to substitute teachers state-mandated due-process rights as well as federal civil rights. Frontline is sued in its corporate capacity.

GRAVAMEN – General Allegations:

7.     At all times material herein, Plaintiff was an employee of the Board of Education of Collier County, Florida, and of the Collier County School District; he is required by state statute to be under annual contract to and with the Board:

a.     Plaintiff was hired in May 2003 by the Board and the School District pursuant to Florida Statutes §§ 1012.35 and 1012.39 as a substitute teacher and long ago ceased to be a "probationary" employee. Plaintiff was employed by the Board and the School District as a substitute teacher from 17 May 2003 to 31 April 2008, was employed upon a severely restricted

6

basis by Defendant Board and the School District during May 2008 and continued to be employed as a substitute teacher upon said restricted basis by Defendant Board during significant portions of the 2008-09 school year. In November 2009, Plaintiff was placed under additional restrictions, amounting to total suspension, and under conditions which effectively amount to unlawful discharge.

b.   As a non-probationary substitute teacher, pursuant to Florida Statutes § 1012.39(2), Plaintiff enjoys all legal protections afforded certified teachers hired by Defendant Board.

c.   As a non-probationary substitute teacher, pursuant to Florida Statutes § 1012.33, Plaintiff has the right to a written yearly contract, which contract by law must provide that Plaintiff may be suspended or discharged solely for just cause, where "just cause" is defined as actions equivalent to misconduct in office, incompetency, gross insubordination, willful neglect of duty, or conviction of crime involving moral turpitude.

   A.   Plaintiff's right to a contract is well established in the law (see, e.g., former Fla.Stat. § 231.47).

   B.   Pursuant to Fla.Stat. § 1012.23(1), Defendant Board is not empowered to authorize any alternative employment scheme with regard to substitute teachers nor otherwise fail to adhere to Fla. Stat. § 1012.33.

   C.   Neither Plaintiff nor any other substitute teacher, member of the instructional staff, is an "at will" employee.

8.   For the purpose of application to the instant matter of the Fourteenth Amendment to the Constitution of the United States, Plaintiff has a "property right" in retention of his employment originating in state law. In making this allegation, Plaintiff relies in part upon the opinion of the Supreme Court of the United States expressed in the cases of *Board of Regents v. Roth*, 408 U.S. 564 (1972), and its progeny, e.g., *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), as well as state cases, *e.g., Sutor v. Cochran*, 687  So.2d 897 (5th Dist., 1997), recon.den., citing *Thomason v. McDaniel*, 793 F.2d 1247, 1249 (11th Cir., 1986), and *Ragucci v. City of Plantation*, 407 So.2d 932, 935 (4th Dist., 1981).

9.   Because Florida's statutes forbid termination or suspension of Plaintiff for other than "just cause," and because "just cause" is defined by the statute as actions equivalent to misconduct in office, incompetency, gross insubordination, willful neglect of duty, or conviction of crime involving moral turpitude, for the purpose of application to the instant matter of the Fourteenth Amendment to the Constitution of the United States, suspension of Plaintiff by Defendant Board, Defendant School District, or its employees imparts to Plaintiff's

professional reputation a "stain" sufficient also to establish in Plaintiff a "liberty" interest in his continued employment. In making this allegation, Plaintiff again relies upon the opinions of the Supreme Court of the United States in the case of *Board of Regents v. Roth, supra*, and its progeny.

10. Substitute teachers in Collier County obtain substitute assignments from the Board via a computerized system made available by Defendant Frontline and known as "Aesop." Defendants Deborah Terry, Terry Burdick, and (previously) Gladys Rodriguez have been delegated authority by Defendant Thompson, in the person of Defendant Hamblett, and now have (or have had) the capacity, independent from Defendant Thompson's and Defendant Hamblett's immediate control or supervision, to block designated substitute teachers from receiving Aesop assignments for selected teachers or schools. This capacity is being (or has been) exercised at the mere request of teachers and administrators associated with the several schools of the district, including the mere request of individuals not possessing sufficient administrative authority. The practice, pursuant to policy, has the effect of partially suspending the affected substitute teacher from service by depriving him or her of access to the entire pool of available jobs, thereby assuring the said substitute periods of involuntary unemployment.

   a. The practice pursuant to policy is being applied generally to all substitute teachers employed by the School District, including to Plaintiff Robert Brian Crim; and, Robert Brian Crim is representative of this class.

   b. The practice pursuant to policy is being used as an end-around to deprive substitute teachers, including Plaintiff Robert Brian Crim, of rights to due process guarantied by Fla.Stat. § 1012.33; and, Robert Brian Crim is representative of this class of substitute teachers so injured.

11. In executing the practice pursuant to policy described in paragraph 10 of the instant complaint, *supra*, administrative personnel employed by Defendants Board and School District (including Defendants Terry, Burdick, and Rodriguez) have not been adequately trained by Defendants Thompson or Hamblett in the constitution or laws of the State of Florida or the United States of America; as a result, said administrative personnel are applying local custom and usage to the discipline or discharge of substitute teachers in ways which violate the Constitution of the United States, the constitution of the State of Florida, Florida's statute law, and Title 42, United States Code § 1983:

   a. Said administrative personnel are failing to serve in a timely manner, as required by the constitutions and laws, complaints made against substitute teachers by employees of the several schools established and run by Defendant School District, and are proceeding upon those complaints in secret, to the detriment of the adversely affected substitute teacher.

   b. Because of the failure of Defendant Frontline Placement Technologies to

put adequate locks and safeguards upon access to its product, said administrative personnel, without adequate training or sufficient certified authority, can break into and are breaking into the Aesop System, cancelling jobs contracted by substitute teachers, and disabling their passwords, preventing them from obtaining work.

c.   Said administrative personnel, without adequate training, sufficient certified authority, or instruction from Defendant Board, are preventing substititute teachers from obtaining jobs at schools from which the said administrative personnel previously have received complaints, including complaints which are constitutionally bogus, legally inadequate, false, or of insufficient merit to qualify for such adverse actions under Florida's law.

d.   Said administrative personnel are assisting others unnamed herein and unknown by perfecting (under color of local usage or custom) these others efforts to violate the civil and constitutional rights of substitute teachers, specifically rights to freedom of speech and academic freedom.

e.   Said administrative personnel are acting in ways which deprive adversely affected substitute teachers of due process of law, as well as effecting upon them deprivations of liberty and property without due process of law.

12.   On information and belief, during the 2007-08 school year, three complaints were made against Plaintiff in his capacity as a substitute teacher by persons not defendant herein, which complaints carried with them the request that Plaintiff be blocked either from teaching certain classes or at certain schools:

a.   Bard Keeler is, and at all times material herein was, a teacher certified in social studies at Palmetto Ridge High School -- a high school in Collier County administered by Defendant Board -- and is chairman of the social-science department there; however, Bard Keeler does not have administrative authority at Palmetto Ridge High School, nor does he possess administrative certification.  On information and belief, on or at a time prior to 18 September 2007, Bard Keeler did induce Defendant Rodriguez to block Plaintiff from obtaining teaching assignments in his classes at Palmetto Ridge High School, in effect partially suspending him.  Subsequently, on or about 22 October 2007, the said blocking was extended by Defendant Rodriguez to any and all classes in social science offered by Palmetto Ridge High School.  A copy of the extant e-mail correspondence relating these actions is attached hereto as **Exhibit 1(a)** and is incorporated herein:

   A.   On information and belief, no other record relating the complaint exists (including any record specifying the original request).

   B.   The extant record was inserted into Plaintiff's personnel file maintained by Defendant Board.

9

    C.    The extant record was inserted into said file secretly.

    D.    The extant record is not signed by any person.

    E.    The extant record was not timely served upon Plaintiff.

b.    Tamara Caraker was at certain times material herein assistant principal in charge of curriculum at Lely High School -- a high school in Collier County administered by Defendant Board -- and was an administrator of Lely High School. On information and belief, on or about 07 November 2007, Tamara Cariker did induce Defendant Rodriguez to block Plaintiff from obtaining further teaching assignments at Lely High School, in effect partially suspending him. A copy of the extant e-mail correspondence relating these actions is attached hereto as **Exhibit 2(a)** and is incorporated herein:

    A.    On information and belief, no other record relating the alleged incident exists.

    B.    The extant record was inserted into Plaintiff's personnel file maintained by Defendant Board.

    C.    The extant record was inserted into said file secretly.

    D.    The extant record is not signed by any person.

    E.    The extant record was not timely served upon Plaintiff.

c.    Mary Murray was at certain times material herein principal at Golden Gate Middle School -- a middle school in Collier County administered by Defendant Board -- and was the principal administrator of Golden Gate Middle School. On information and belief, on or about 29 April 2008, Mary Murray did induce Defendant Terry to block Plaintiff from obtaining any further assignments at Golden Gate Middle School, in effect partially suspending him. A copy of the extant e-mail correspondence relating these actions is attached hereto as **Exhibit 3(a)** and is incorporated herein:

    A.    On information and belief, no other record relating the alleged incident exists.

    B.    The extant record was inserted into Plaintiff's personnel file maintained by Defendant Board.

    C.    The extant record was inserted into said file secretly.

    D.    The extant record is not signed by any person.

    E.    The extant record was not timely served upon Plaintiff.

13. On or about 01 May 2008, Plaintiff was blocked, either by Defendant Terry, Defendant Burdick, or by an unknown other of the Board's employees, from accessing the Aesop system at all. On information and belief, Defendant Terry or an unknown other, without granting Plaintiff any notice or hearing at all, e-mailed the curriculum secretaries at the high schools and middle schools administered by the Board, informing same that Plaintiff was terminated from further service with the school district:

    a. Plaintiff was terminated upon a then unpublished or uncirculated "three-strikes" rule created secretly by unknown individuals and adhered to secretly by Defendant Terry, which rule declares that any substitute teacher recipient of three "blocked" accesses to Aesop in a calendar year (whether secret or not, and regardless of underlying veracity or reason) will be terminated from further employment by Defendant School District and Defendant Board.

    b. The said rule wantonly violates Fla.Stat. § 1012.33, which allows termination of a contracted member of the instructional staff (including substitute teachers) solely for just cause.

    c. The "three-strikes" rule is arbitrary and readily subject to capricious, illegal, and unconstitutional application -- in the absence of statutory authorization, there is no more rational reason for applying to school-employment practices a rule unique to American baseball than for applying an equally famous rule unique to American football ("four downs and over") or for that matter golf ("73 is one over par").

    c. The "three strikes" rule is arbitrarily adopted in defiance of state statute,

14. Upon complaint either from Carolyn Wilson, curriculum vice principal at Palmetto Ridge High School, or Esperanza Rionda (Mrs. Wilson's administrative assistant), said termination (paragraph 10 of the instant complaint, *supra*) was rescinded after a couple of days. Instead, Plaintiff was placed under suspension and blocked from teaching at any school administered by the Board *except* for Palmetto Ridge High School:

    a. Plaintiff remains prevented from teaching any class in social studies or social science at Palmetto Ridge High School.

    b. Plaintiff is informed by Defendant Terry that the said suspension is permanent, upon her authority.

    c. Plaintiff is informed by Defendant Terry that any other suspension previously imposed upon Plaintiff (including any suspension imposed upon Plaintiff secretly or without notice or hearing) also is permanent, upon her authority.

d.   Plaintiff was informed by Defendant Terry that any further suspension imposed upon Plaintiff (including any further suspension imposed upon Plaintiff secretly or without notice or hearing, whether for cause or not) would result in his termination from employment by Defendant Board.

e.   Plaintiff is informed by Defendant Terry that no effort was made on her part to ascertain the truth of any of the complaints made against Plaintiff, nor whether said complaints were legally sufficient to warrant her adverse actions.

f.   At no time did Defendant Terry make known to Plaintiff what his appeal rights were against her determinations, nor whether any time limits existed for the exercise of said rights.  Defendant was not granted any notice or hearing prior to his (subsequently rescinded) termination.

g.   Defendant Terry reasonably, as well as constructively, is aware that her actions are knowing, willful, intentional, unlawful, and mischievous.

15.   Informed (finally) in mid-May of the existence of all these outstanding "charges," as well as their substance (or want thereof), Plaintiff pursuant to Florida Statutes § 1012.31 has answered in writing:

a.   Plaintiff never substituted for Bard Keeler in the entire 2007-2008 school year and, more than two years after the fact, is not certain what this accusation is about.  He did substitute at Palmetto Ridge High School for *one* teacher of social science during the 2007-2008 school year and obtained authorization in writing in advance to proceed as he did (so there is no violation beyond any claim that Plaintiff was presenting his views of the subject).  See further **Exhibit 1(b)** attached hereto and incorporated herein.

b.   To the best of Plaintiff's recollection, the incident complained of by Tamara Caraker actually was an incident involving significant disruptive misbehavior by *some* members of one of the classes involved.  Tamara Caraker takes out of context a few snippets from an extensive report and construes them to hide both the existence of the disciplinary problem and the inadequacy with which Lely High School's administrators were redressing disciplinary problems or supporting substitute teachers in general, and to heap abuse on Plaintiff's views regarding immigration and naturalization in the United States, specifically that people allowed to come and settle here should be required to learn the English language or be sent home.  See further **Exhibit 2(b)** attached hereto and incorporated herein.

c.   The incident complained of by Mary Murray never happened and, on information and belief, is pretense –

A.   Plaintiff does not own and never has owned a cell phone, nor did he have custody of such a phone during the time in question.  The

phone in the classroom either did not work or was operating on some system unknown to Plaintiff (Plaintiff made mention of this in his report). See further **Exhibit 3(b)** attached hereto and incorporated herein.

B.  The complaint was made very shortly after Plaintiff had made a generalized complaint that some schools in the district, including Golden Gate Middle School, were not adequately supporting substitutes by failing to provide them with adequate written instructions and disciplinary forms, and Plaintiff for a long period of time prior thereto commonly had served at Golden Gate Middle School as a substitute sans complaint.

C.  Furthermore, a claim of "inappropriate" language is inadequate to merit termination or suspension as a matter of law – such does not specify what was said, or in what context, and Plaintiff has no idea what the claim is.

16.  Despite never having been informed of his appeal rights, following a preliminary meeting on 15 May 2008 with Defendant Terry, Defendant Burdick, and the since retired attorney, Phillip DeBraun, Plaintiff timely requested of Defendant Board notice and a hearing upon the accusations made against him, demanded payment of monies denied him during the time he was suspended in May 2008, and also demanded compliance on the part of the Board, its members, and its employees with requirements detailed in the opinion expressed by the Supreme Court of the United States in the case of *Brock v. Roadway Express, Inc.*, 481 U.S. 252 (1987); Defendant Board and its members have declined to set a date for any hearing and, indeed, have completely ignored Plaintiff's requests or demand for payment, treating them for almost twenty-three months with complete indifference:

a.  More than sixty days have elapsed since Plaintiff requested proper notice and a hearing from the Board;

b.  Defendants Terry *et al.* have failed to sustain their accusations against Plaintiff within the said sixty days;

c.  Defendant Board has declined to apologize to Plaintiff, award him back pay per the requirements of Fla.Stat. § 1012.33(6)(a), or reinstate him to full service and remove the blocks entered against him in Aesop.

17.  Plaintiff Robert Brian Crim appeared before Defendant Board to demand his due-process rights on or about 18 September 2008; by coincidence, it was on said date that Plaintiff's general suspension expired. Nevertheless, Defendants Thompson, Hamblett, and Terry continued to keep Plaintiff suspended to and through 07 November 2008, the time when one year had expired since the date of the second complaint by Tamara Caraker.

a.    During the summer of 2008, Defendant Board amended several of its personnel policies, upon recognition that said policies were not in compliance with, and in some cases conflicted with, statutes of the State of Florida.

b.    Also amended at this time, either by Defendant Board or Defendant School District, was the "three strikes" rule (paragraph 13 of the instant complaint, *supra*), which rule then was reduced to "two strikes."

c.    Said "two strikes" rule then was applied retroactively to Plaintiff, as part of an effort on the part of Defendants Thompson, Hamblett, Terry, Burdick, and the School District to erase from the instant record the clear and obvious violation of Plaintiff's First Amendment rights occasioned by the first "strike" submitted by Bard Keeler [*supra* at paragraph 11(a)].

d.    As a result of the aforementioned efforts to cover up the original violation, Plaintiff Robert Brian Crim was subjected to one and a half months of additional suspension for which Defendants could provide no justification or excuse at all, other than a crude effort on the part of same to avoid facing the legal consequences of what they did.

18.   Plaintiff remains suspended from obtaining substitute assignments at a significant number of Collier County's public schools and, if defendants are not enjoined, will continue to remain suspended from obtaining said assignments. This materially will impact upon his compensation for services and imparts a stain upon his professional competence and employability for which damages at law are inadequate.

19.   In April 2009, Plaintiff having been restored at least to general service as a substitute teacher by the expiration of the imposed suspensions, and during the continuum which was the 2008-2009 contract year, Plaintiff unilaterally had imposed upon himself by Defendant Board a one-dollar-per-hour cut in pay.

a.    The pay cut was effective on 09 April 2009 and continued through the end of the 2008-2009 school year, during the period in which Plaintiff was *supposed* to be under annual contract (at least according to Florida statute).

b.    The pay cut was imposed on all substitute teachers employed by Defendant Board and Defendant School District, including all substitute teachers of which Plaintiff Robert Brian Crim is representative as a class, and continues to this day.

c.    Although the School District claimed the money saved was necessary because of diminutions in the school system's property-tax base, Defendant Thompson and his designees almost immediately thereafter attempted to have the funds diverted into funding junkets for favored personnel to Harvard University and Singapore, ostensibly to study why the Singaporeans are excelling in the teaching of mathematics.

d.   An online news account [Naples *Daily News*] relating details of the pay cut is attached hereto as **Exhibit 4** and incorporated herein.

20.   On or about 02 November 2009, Defendant Burdick conveyed to Plaintiff Robert Brian Crim an additional e-mail relating that Plaintiff once more was suspended from serving as a substitute teacher, this time upon a secret complaint originating from someone at Manatee Middle School. A copy of the said e-mail message from Defendant Burdick is attached hereto as **Exhibit 5(a)** and incorporated herein.

a.   The precise origin of the said complaint is not specified.

b.   The details of the said complaint are not given.

c.   Despite numerous efforts on the part of Plaintiff Robert Brian Crim to ascertain the substance of the said complaint, see, e.g., **Exhibit 5(b)** attached hereto, Defendant Burdick, with the acquiescence of Defendants Terry, Hamblett, and Thompson, continues to refuse to serve the said complaint upon Plaintiff and insists on keeping it secret.

d.   Plaintiff is unable to respond in any meaningful way to a secret complaint.

e.   Plaintiff is blocked (again) from access to the Aesop system by the actions of Defendant Burdick, who has surreptitiously entered into the Aesop system to cancel all of Plaintiff Robert Brian Crim's contracted substitutions subsequent to 02 November 2009 and disable his password.

  A.   Defendant Burdick does not have statutory authorization to suspend or similarly discipline substitute teachers in such a manner.

  B.   Defendant Burdick acted without proper specific direction either from Defendant Thompson or from Defendant Board.

  C.   Neither Defendants Thompson, Hamblett, Terry, or Burdick yet have complied with their statutory obligations of notice and hearing established by Fla.Stat. § 1012.33(6)(a).

  D.   Defendant School District and Defendant Thompson are refusing to pay Plaintiff Robert Brian Crim during this period of suspension even though said Defendants are without authorization to do so from Defendant Board.

f.   Plaintiff timely has demanded from Defendant Board a hearing upon the complaint after being served with the specification of charges required by Fla.Stat. § 1012.31(2)(c).

g.   More than sixty days have expired since Plaintiff Robert Brian Crim demanded the said hearing, and to date, no hearing has been scheduled by

Defendant Board, no proof of the claimed charges have been proffered by Defendants Thompson, Hamblett, Terry, or Burdick, and indeed all of the claimed charges remain secret (Plaintiff still does not know what they are).

21.    Although the procedural requirements of Fla.Stat. § 1012.33(6)(a) have not been complied with and, because of lapse of time, said requirements now cannot be complied with, defendants herein have not seen fit to comply with the requirement, also imposed by Fla.Stat. § 1012.33(6)(a), that Plaintiff Robert Brian Crim be restored to full service and awarded all back pay accrued to him, either with respect to the claimed (but still secret) incident at Manatee Middle School or any of the other incidents detailed herein, including the wanton violation of Plaintiff's First Amendment and Fourteenth Amendment rights.

22.    Plaintiff has complied with the requirements of Fla.Stat. § 768.28 (waiver of sovereign immunity), which imposes conditions precedent:

    a.    Plaintiff Robert Brian Crim has made formal demand of Defendant Board and Defendant School District that it comply with the provisions of Fla.Stat. § 1012.33(6)(a), restore Plaintiff to full service as a substitute teacher, apologize to school personnel employed by the School District, and award him all back pay.

    b.    Plaintiff Robert Brian Crim has presented his claim to Florida's Department of Financial Services.

    c.    Plaintiff Robert Brian Crim previously has supplied to Defendant School District his legal name, date and place of birth, and Social Security Account number.

    d.    Plaintiff is unaware of any adjudicated penalty, fine, fee, restitution or other judgment held against him by any tribunal and in excess of $200.00; however, Plaintiff has been awarded by Florida's Department of Financial Services unemployment compensation warrants, which warrants at the time of the instant filing are estimated by Plaintiff to be in the total sum of approximately $5,000 to $6,000 in American paper money.

    e.    On information and belief, Florida's Department of Financial Services is ignoring and failing to address any of Plaintiff's other claims.

GRAVAMEN -- Individual Counts:

COUNT ONE:

23.    Paragraph 7 of the instant complaint, *supra*, is incorporated herein.

24.   Despite the requirements of Florida Statutes § 1012.33 or its predecessor, in the entire time Plaintiff has been employed by Defendants Board and School District, neither they nor any of the other defendants have offered Plaintiff a written contract for any period of time.  On information and belief, this failure is a general practice of the defendants and has been applied to all substitute teachers employed by the Board, including those in the class Plaintiff Robert Brian Crim represents.

25.   By its failure to comply with Fla.Stat. § 1012.33, Defendant Board has attempted to give a stamp of legitimacy to unlawful actions by its employees adverse to the legal rights and privileges of substitute teachers in Collier County; and, if not enjoined from withholding the contract required by law or otherwise commanded to make good upon said statutory duty, will continue so to do by insisting that substitute teachers are mere "at will" employees having no employment rights.  In support of this allegation, Plaintiff has attached hereto **Exhibit 6**, which is incorporated herein.

## COUNT TWO:

26-27.   Paragraphs 7 and 19 of the instant complaint, *supra*, are incorporated herein.

28.   By unilaterally cutting the pay of Plaintiff Robert Brian Crim and all other substitute teachers employed by Defendant School District, Defendant Board did breech its legally imputed contract with each and every said employee, including Plaintiff Robert Brian Crim and that class of substitute teachers which Plaintiff Robert Brian Crim represents.

## COUNT THREE:

29-36.   Paragraphs 7 to 12 and 19-20, inclusive, of the instant complaint, *supra*, are incorporated herein.

37.   By secretly inserting unsigned, derogatory material into Plaintiff's personnel file, Defendant Rodriguez violated § 1012.31 of Florida's statutes, in that said materials (1) have not been signed by a person competent to know the facts or make the judgment, (2) were not timely provided to the employee either by certified mail or personal delivery, (3) were inserted in a manner which effectively denied the affected employee both his right to answer the said accusations in writing or request that the district school superintendent or his designee make informal inquiry into submission of material shown to be false, and   (4) were inserted in a manner which effectively denied the affected employee his right to examine the personnel file.

38.   By secretly inserting unsigned, derogatory material into Plaintiff's personnel file, Defendant Burdick violated § 1012.31 of Florida's statutes, in that said

materials (1) have not been signed by a person competent to know the facts or make the judgment, (2) were not timely provided to the employee either by certified mail or personal delivery, (3) were inserted in a manner which effectively denied the affected employee both his right to answer the said accusations in writing or request that the district school superintendent or his designee make informal inquiry into submission of material shown to be false, and (4) were inserted in a manner which effectively denied the affected employee his right to examine the personnel file.

39.   By the foregoing acts, errors, omissions, injuries, and wrongs, defendants Rodriguez and Burdick have deprived, and if not enjoined will continue to deprive, Plaintiff of the due process required by the constitution and laws of the State of Florida, as well as the due process of law required by Amendment Fourteen to the Constitution of the United States.

## COUNT FOUR:

40-45.   Paragraphs 7, 8, and 11 through 14, inclusive, of the instant complaint, *supra*, are incorporated herein.

46.   By the foregoing acts, errors, omissions, injuries, and wrongs, Defendant Terry has deprived, and if not enjoined will continue to deprive, Plaintiff of the due process required by the constitution and laws of the State of Florida, as well as the due process of law required by Amendment Fourteen to the Constitution of the United States.

## COUNT FIVE:

47-54.   Paragraphs 7 through 14, inclusive, of the instant complaint, *supra*, are incorporated herein.

55.   By acting to Plaintiff's detriment upon the complaints made to her by Bard Keeler and Tamara Caraker, Defendant Rodriguez violated Plaintiff's rights to academic freedom and freedom of speech guarantied by the First Amendment to the Constitution of the United States and incorporated against the several States by section one of the Fourteenth Amendment to the Constitution of the United States:

a.   In expressing to an AP United States history class his opinion re the religious and economic factors foundational to the American Revolution, Plaintiff speaks a matter of public concern.

b.   In expressing (however inartfully) to a fellow teacher his opinion re the proper immigration policies of the United States, Plaintiff speaks a matter of public concern.

    c.      Expressing opinions on matters of public concern is protected speech, regardless of whether the audience is public or private:

        A.      Plaintiff not only is invited but is required to leave a report of the day's events for the regular teacher.

        B.      Upon these allegations, the opinion of the Supreme Court of the United States, in the cases of *Connick v. Myers*, 461 U.S. 138 (1983), and *Givhan v. Consolidated School District,* 439 U.S. 410 (1979), are directly on point. The law is well settled, and defendants have good notice of it.

56.    By continuing to act to Plaintiff's detriment upon the complaints made to Gladys Rodriguez by Bard Keeler and Tamara Caraker, Defendant Terry violated, and if not enjoined, will continue to violate Plaintiff's rights to academic freedom and freedom of speech guarantied by the First Amendment to the Constitution of the United States and incorporated against the several States by section one of the Fourteenth Amendment to the Constitution of the United States, in that Plaintiff is suspended from practice solely for his exercise of said rights and liberties.

57.    Defendants Rodriguez's and Terry's conduct, paragraphs 51 and 52 of the instant complaint, *supra*, subject them to individual liability pursuant to Title 42, United States Code § 1983, in that defendants Rodriguez and Terry are relying upon local usage or custom to punish Plaintiff for exercising long-established, constitutionally protected liberties of which they are aware.

## COUNT SIX:

58-65.    Paragraphs 7 through 12, inclusive, 20 and 21 of the instant complaint, *supra,* are incorporated herein.

66.    By acting secretly and to Plaintiff's detriment upon the complaints made to her by Bard Keeler and Tamara Caraker, Defendant Rodriguez deprived Plaintiff of the due-process of law specified and required by § 1012.31 of Florida's statutes, in that, while acting pursuant to local custom or usage, Defendant Rodriguez denied Plaintiff procedural rights to effectively contest the complaints as well as constitutionally mandated notice and a timely hearing upon the complaints, which denial violates the due-process clause of Florida's constitution.

67.    By acting secretly and to Plaintiff's detriment upon the complaint made to her by Mary Murray, Defendant Terry deprived Plaintiff of the due-process of law specified and required by § 1012.31 of Florida's statutes, in that, while acting pursuant to local custom or usage, Defendant Terry denied Plaintiff procedural rights to effectively contest the complaints as well as constitutionally mandated notice and a timely hearing upon the complaints, which denial violates the due-

process clause of Florida's constitution.

68.     By acting secretly and to Plaintiff's detriment upon the complaint made to her by unknown individuals at Manatee Middle School, Defendant Burdick deprived Plaintiff of the due-process of law specified and required by § 1012.31 of Florida's statutes, in that, while acting pursuant to local custom or usage, Defendant Burdick denied Plaintiff procedural rights to effectively contest the complaints as well as constitutionally mandated notice and a timely hearing upon the complaints, which denial violates the due-process clause of Florida's constitution

## COUNT SEVEN:

69-76.  Paragraphs 7 through 12, inclusive, 20 and 21 of the instant complaint, *supra,* are incorporated herein.

77.     By acting secretly and to Plaintiff's detriment upon the complaints made to her by Bard Keeler and Tamara Caraker, Defendant Rodriguez deprived Plaintiff of the due-process of law required by section one of the Fourteenth Amendment to the Constitution of the United States, as well as by state law, in that, while acting pursuant to local custom or usage, Defendant Rodriguez denied Plaintiff constitutionally mandated notice and a hearing upon the complaints, which denial violates the provisions of Title 42, United States Code § 1983.

78.     By acting secretly and to Plaintiff's detriment upon the complaint made to her by Mary Murray, Defendant Terry deprived Plaintiff of the due-process of law required to be afforded him by section one of the Fourteenth Amendment to the Constitution of the United States, as well as by state law, in that, while acting pursuant to local custom or usage, Defendant Rodriguez denied Plaintiff constitutionally mandated notice and a hearing upon the complaints, which denial violates the provisions of Title 42, United States Code § 1983.

79.     By acting secretly and to Plaintiff's detriment upon the complaint made to her by individuals at Manatee Middle School, Defendant Burdick deprived Plaintiff of the due-process of law required to be afforded him by section one of the Fourteenth Amendment to the Constitution of the United States, as well as by state law, in that, while acting pursuant to local custom or usage, Defendant Burdick denied Plaintiff constitutionally mandated notice and a hearing upon the complaints, which denial violates provisions of Title 42, United States Code § 1983.

## COUNT EIGHT:

80-83.  Paragraphs 7, 8, 13 and 14 of the instant complaint, inclusive, *supra*, are incorporated herein.

84.     Paragraph 15 of the instant complaint, *supra*, is incorporated herein.

85.  The accusations brought by Defendants in this matter either are predicated upon an unconstitutional construction of the law, are brought in violation of law, or are false.

86.  By continuing to act to Plaintiff's detriment upon the complaints made to Defendant Rodriguez by Bard Keeler and Tamara Caraker, and by continuing to act to Plaintiff's detriment upon the complaint made to herself by Mary Murray, Defendant Terry deprived Plaintiff of property protected by the due-process of law required to be afforded him by section one of the Fourteenth Amendment to the Constitution of the United States, in that while acting pursuant to local custom or usage, Defendant Terry denied Plaintiff state employment in which Plaintiff had a property interest, as well as the fruits thereof, which denial violates the provisions of Title 42, United States Code § 1983.

COUNT NINE:

87-96.  Paragraphs 7-14, inclusive, and 17 and 18 of the instant complaint, *supra*, are incorporated herein.

97.  By keeping Plaintiff suspended beyond 18 September 2008 and to and through 07 November 2008, as part of their cover-up efforts, Defendants Terry, Hamblett, and Thompson, acting without any direction or authorization from Defendant Board at all, deprived Plaintiff of property protected by the due-process of law required to be afforded him by section one of the Fourteenth Amendment to the Constitution of the United States, in that while acting pursuant to local custom or usage, Defendants Terry, Hamblett, and Thompson denied Plaintiff state employment in which Plaintiff had a property interest, as well as the fruits thereof, which denial violates the provisions of Title 42, United States Code § 1983.

COUNT TEN:

98-112.  Paragraphs 7-21, inclusive, of the instant complaint, *supra*, are incorporated herein.

113.  By failing to hold the hearings demanded by Plaintiff Robert Brian Crim, by failing to schedule same within the 60 days set by law, and in failing to restore Plaintiff Robert Brian Crim thereafter to full service or award him back pay upon the failure of Defendants Thompson, Hamblett, Terry, Rodriguez, Burdick, or the School District to sustain their accusations within the time limits set by law, Defendant Board has violated the provisions of § 1012.33(6)(a) of Florida's statutes.

114.  By failing to hold the hearing demanded by Plaintiff Robert Brian Crim, by failing to schedule same within the 60 days set by law, and in failing to restore Plaintiff

Robert Brian Crim thereafter to full service or award him back pay upon the failure of Defendants Thompson, Hamblett, Terry, Rodriguez, Burdick, or the School District to sustain their accusations within the time limits set by law, Defendant Board has perfected these other defendants' violation of 42 United States Code § 1983 in that, pursuant to local custom or usage, Plaintiff Robert Brian Crim has been made to suffer legal injury as a price for exercising his First Amendment freedoms.

115.   By failing to hold the hearing demanded by Plaintiff Robert Brian Crim, by failing to schedule same within the 60 days set by law, and in failing to restore Plaintiff Robert Brian Crim thereafter to full service or award him back pay upon the failure of Defendants Thompson, Hamblett, Terry, Rodriguez, Burdick, or the School District to sustain their accusations within the time limits set by law, Defendant Board has perfected these other defendants' violation of 42 United States Code § 1983 in that, pursuant to local custom or usage, Plaintiff Robert Brian Crim has been deprived of liberty and property without due process of law.

## COUNT ELEVEN:

116-130.   Paragraphs 7-21, inclusive, of the instant complaint, *supra*, are incorporated herein.

131.   By failing to obtain the hearing demanded by Plaintiff Robert Brian Crim, by failing to have same scheduled within the 60 days set by law, and in failing to restore Plaintiff Robert Brian Crim thereafter to full service or award him back pay upon the failure of Defendants Thompson, Hamblett, Terry, Rodriguez, Burdick, or the School District to sustain their accusations within the time limits set by law, Defendant Board has violated the due-process clause of Florida's constitution, in that Plaintiff Robert Brian Crim is deprived of liberty and property without due process of law.

132.   By failing to hold the hearing demanded by Plaintiff Robert Brian Crim, by failing to schedule same within the 60 days set by law, and in failing to restore Plaintiff Robert Brian Crim to full service or award him back pay upon the failure of Defendants Thompson, Hamblett, Terry, Rodriguez, Burdick, or the School District to sustain their accusations within the time limits set by law, Defendant Board has violated the due-process clause of the Fourteenth Amendment to the Constitution of the United States, in that Plaintiff Robert Brian Crim is deprived of liberty and property without due process of law.

## COUNT TWELVE:

133-144.   Paragraphs 7-15, inclusive, and paragraphs 19-21, inclusive, of the instant complaint, *supra*, are incorporated herein.

145. The accusations of Defendants Thompson, Hamblett, Terry, Burdick, and Rod-riguez are constitutionally unsustainable, legally insufficient, or false, nor do the accusations made rise to the standard set for suspensions or dismissals by Fla.Stat. § 1012.33(1)(a), and upon defendants' insertion of same into Plaintiff's personnel file (without satisfaction of all requirements set by Fla.Stat. § 1012.31), and upon defendants' actions and words in response thereto, Plaintiff Robert Brian Crim is professionally besmirched and defamed.

146. By the words and actions which Plaintiff Robert Brian Crim has taken in response to the aforesaid slings and arrows of outrageous fortune (paragraph 131 of the instant complaint, *supra*), Plaintiff Robert Brian Crim has demanded from Defendants Thompson, Hamblett, Terry, and Burdick a retraction and been denied same.

COUNT THIRTEEN:

147-159. Paragraphs 7-16, inclusive, and paragraphs 18-20 of the instant complaint, *supra*, are incorporated herein.

160. The accusations of Defendants Thompson, Hamblett, Terry, Burdick, and Rod-riguez are constitutionally unsustainable, legally insufficient, or false, nor do the accusations made rise to the standard set for suspensions or dismissals by Fla.Stat. § 1012.33(1)(a), and upon defendants' insertion of same into Plaintiff's personnel file (without satisfaction of all requirements set by Fla.Stat. § 1012.31), upon defendants' actions and words in response thereto, and upon the complete failure of Defendants Board  or the School District to take remedial action, Plain-tiff Robert Brian Crim is professionally besmirched and defamed.

161. By the words and actions which Plaintiff Robert Brian Crim has taken in response to the aforesaid slings and arrows of outrageous fortune (paragraph 145 of the instant complaint, *supra*), Plaintiff Robert Brian Crim has demanded from Defendant Board a retraction and been denied same.

Whereby Plaintiff has been legally injured.

AD DAMNUM.

A. By all of the aforementioned acts, omissions, injuries, and wrongs (paragraphs 7-161 of the instant complaint, *supra*), Plaintiff Robert Brian Crim and the class which he represents are deprived of income properly contracted for, viz., the pay which Plaintiff and his class were denied by Defendant Board during April and May of 2009.

B. By all of the aforementioned acts, omissions, injuries, and wrongs (paragraphs 7-161 of the instant complaint, *supra*), Plaintiff Robert Brian Crim and the class

which he represents are forced to suffer unlawful insertions of derogatory material into their personnel files, which insertions have been done by the defendants in secret in ways which have deprived Plaintiff and Plaintiff's class of due-process rights created by Fla.Stat. § 1012.31.

C.   By all of the aforementioned acts, omissions, injuries, and wrongs (paragraphs 7-161 of the instant complaint, *supra*), Plaintiff Robert Brian Crim and the class which he represents are forced to suffer unlawful deprivations of due process of law created by Fla.Stat. § 1012.33.

D.   By all of the aforementioned acts, omissions, injuries, and wrongs (paragraphs 7-161 of the instant complaint, *supra*), Plaintiff Robert Brian Crim and the class which he represents are forced to suffer unlawful pains and punishments for exercising rights to freedom of speech and academic freedom secured by the First and Fourteenth amendments to the Constitution of the United States, as well as by Article I of the constitution of the State of Florida.

E.   By all of the aforementioned acts, omissions, injuries, and wrongs (paragraphs 7-161 of the instant complaint, *supra*), Plaintiff Robert Brian Crim and the class which he represents are forced to suffer unlawful deprivations of liberty secured by section 1 of the Fourteenth Amendment to the Constitution of the United States, as well as by Article I of the constitution of the State of Florida.

F.   By all of the aforementioned acts, omissions, injuries, and wrongs (paragraphs 7-161 of the instant complaint, *supra*), Plaintiff Robert Brian Crim and the class which he represents are forced to suffer unlawful deprivations of property secured by section 1 of the Fourteenth Amendment to the Constitution of the United States, as well as by Article I of the constitution of the State of Florida.

G.   By all of the aforementioned acts, omissions, injuries, and wrongs (paragraphs 7-161 of the instant complaint, *supra*), Plaintiff Robert Brian Crim and the class which he represents are forced to suffer serious loss of reputation, without adequate recourse, as well as all of the adverse social and financial consequences which said loss or reputation entails.

H.   By all of the aforementioned acts, omissions, injuries, and wrongs (paragraphs 7-161 of the instant complaint, *supra*), Plaintiff Robert Brian Crim and the class which he represents are forced to suffer periods of unemployment highly disruptive of personal cash flow and potentially legally embarrassing to their previous contractual obligations.

Wherefore —


PRAYER FOR RELIEF.

Plaintiff and the class which he represents are entitled to the following declaratory relief:

a.      That a substitute teacher in the state of Florida is a member of the instructional staff of the district by which he or she is employed.  See Fla.Stat. § 1012.01.

b.      That a substitute teacher in the state of Florida is an employee covered by the protections of Fla.Stat. § 1012.31 and subject to all of the procedural protections imposed thereby.  See Fla.Stat. § 1012.31.

c.      That a substitute teacher in the state of Florida is an employee covered by the protections of Fla.Stat. § 1012.33 and subject to all of the procedural protections imposed thereby.  See Fla.Stat. § 1012.33.

d.      That a substitute teacher in the state of Florida is an employee covered by the protections of the Fourteenth Amendment to the Constitution of the United States and may not be disciplined, suspended, or discharged, or made to suffer any other pain or penalty in his employment without being afforded due process of law.

e.      That a substitute teacher in the state of Florida is an employee covered by the protections of the First Amendment to the Constitution of the United States and may not be disciplined, suspended, or discharged, or made to suffer any other pain or penalty for his or her exercise of said First Amendment rights.

Plaintiff and the class which he represents are entitled to:

a.      An injunction prohibiting unqualified or inadequately qualified personnel employed by Defendants Board and School District from seeking or obtaining restrictions of service directed at substitute teachers in Collier County, Florida.

b.      An injunction prohibiting Defendants Terry, Rodriguez, Burdick, or any other employee of Defendants Board or School District from inserting into personnel files adequately qualified requests for restriction of a substitute teacher's service prior to there being full compliance by said Defendants or other employee with the provisions of § 1012.31 of the statutes of the State of Florida, or any of its successors.

c.      A writ of mandamus or mandatory injunction obliging Defendants Board and School District, in the person of Defendant Thompson, his successors or assigns, to comply with *all* provisions of § 1012.33 of the statutes of the State of Florida, or any of its successors, and specifically with the requirements which place upon the superintendent or his assigns the burden of proof in making and sustaining accusations made against substitute teachers in Collier County, Florida:

   1.      The accusations must be in writing and comport with the requirements set forth in Fla.Stat. § 1031.31;

   2.      The accusations must be certified by the superintendent or his properly

qualified and authorized designee as rising to the level of seriousness required by § 1012.33(1)(a) of the statutes of the State of Florida before any adverse action may be taken against the accused substitute teacher.

3.    The accusations, once certified, must be served upon the accused substitute teacher, according to the provisions specified in § 1012.31(2)(c) of the statutes of the State of Florida, before any adverse action may be taken against the accused substitute teacher.

4.    Neither the superintendent nor any of his authorized designees may terminate, suspend, or otherwise restrict *without pay* the services of a substitute teacher unless authorized to do so by Defendant Board in accordance with Florida's law.

5.    The accusations, once certified and served, must be sustained before Defendant Board by the superintendent or his authorized designee within the time period set by law (currently 60 days), unless by agreement of the accused substitute teacher a continuance is granted.

6.    In the event accusations are not sustained within the time period allowed by state law, the substitute teacher *promptly* shall be restored to full service, with back pay, in accordance with the provisions of § 1012.33(6)(a).

7.    Substitute teachers so accused must be informed, with the service of the complaint, of their appeal rights and especially any time limits which might attach to the exercise of said rights.

d.    A mandatory injunction requiring Defendants Thompson and Hamblett to adopt training programs designed to make certain that their designees or assigns are aware of the constitutional and statutory protections enjoyed by substitute teachers in terms of their employment, and insuring that those not so trained may not have access to the Aesop system distributed by Defendant Frontline Placement Technologies.

e.    An injunction or mandatory injunction obliging Defendant Frontline Placement Technologies to cease from distributing to Collier County or other school districts versions of its Aesop product which do not have incorporated into the software design adequate locks and safeguards designed to prohibit access to administrative personnel and others lacking sufficient training or certification to terminate or discipline substitute teachers, and obliging said Frontline Placement Technologies to develop, within a reasonable time specified by the Court, software patches designed to install the said locks and safeguards on Frontline's existing systems.

f.    An injunction permanently restraining the defendants from imposing on Plaintiff Robert Brian Crim or the class of substitute teachers he represents any cost or fee for continuing training or in-service requirement, where the training or in-

service requirement is a condition of continued employment by Defendant School District or Defendant Board.

g.   An injunction permanently restraining the defendants from imposing on Plaintiff Robert Brian Crim or the class of substitute teachers he represents any termination, suspension, or blockage from employment without pay until said plaintiff or plaintiffs complete a demanded training or in-service requirement.

Plaintiff and the class which he represents are entitled to money damages:

a.   Substitute teachers in the class represented by Plaintiff Robert Brian Crim shall be paid one dollar for each and every hour said substitute worked during the period of the pay cut while said substitutes still were under contract to the School District (approximately 09 April 2009 to and through the end of the school year). For jurisdictional purposes, Plaintiff Robert Brian Crim estimates that the total monies to be paid by the School District and Defendant Board are between $125,000 and $250,000 in American paper money.

b.   Plaintiff Robert Brian Crim and all substitute teachers in the class he represents shall be awarded back pay for each and every school day during which they were discharged without due process of law, suspended without due process of law, or underemployed as a result of being blocked from service without due process of law.

c.   Plaintiff Robert Brian Crim shall be the beneficiary of a non-retaliation fund, which fund shall be of sufficient amount to generate the income Plaintiff Robert Brian Crim would have received had he been employed full time by Defendant School District and Defendant School Board in the capacity of a substitute teacher; and said income from said fund shall be paid to Plaintiff Robert Brian Crim at regular intervals whether he is employed by Defendant School District and Defendant Board or not, provided that Plaintiff Robert Brian Crim is ready for work, available to work, and willing to work; but, in no circumstances shall Plaintiff Robert Brian Crim not be paid due to genuine illness contracted during the course of his employment. For the purposes of this provision, an "illness contracted during the course of employment" is any communicable disease, such as influenza or other viral or bacteriological infection, commonly seen within the school district and communicated within the school district.

d.   To the extent the Court determines that the acts, omissions, injuries, and wrongs inflicted upon Plaintiff Robert Brian Crim or the class which he represents were the result of willful, deliberate, intentional, and mischievous behavior, Plaintiff(s) are entitled to punitive damages.

Plaintiff Robert Brian Crim is entitled to all costs of the instant litigation, and

Pursuant to Title 42, United States Code § 1988, Plaintiff Robert Brian Crim is entitled to a reasonable attorney's fee for the bringing and prosecution of the instant action, to the extent that said fee is not offset by hours Plaintiff otherwise would have been working for Defendant School District or Defendant Board ("no double-dipping" provision).

WHEREFORE, Plaintiff respectfully prays that this honorable Court try the case alleged by the instant complaint and award unto Plaintiff and the class he represents the several reliefs the complaint has requested.

Respectfully submitted this ____th day of April, 2010, per:


Robert Brian Crim, *pro se*,
1000 Lely Palms Drive, # D-208,
Naples, Florida, 34113-8901.

tel. (239) 793-6503;
geometry@infionline.net

28